**SO ORDERED.**

**SIGNED this 23 day of October, 2007.**



*Dale L. Somers*
**Dale L. Somers**
UNITED STATES BANKRUPTCY JUDGE

_____

Opinion Designated for Electronic Use, But Not for Print Publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| CHRISTOPHER CHARLES NORRIS, MARY BETH NORRIS, | CASE NO. 05-43551-7 CHAPTER 7 |
| DEBTORS. | |
| FRONTIER FARM CREDIT, PCA, | |
| PLAINTIFF, | |
| v. | ADV. NO. 06-7005 |
| CHRISTOPHER CHARLES NORRIS, MARY BETH NORRIS, CRAIG C. NORRIS, FIRST NATIONAL BANK OF GIRARD, FORD MOTOR CREDIT COMPANY, | |
| DEFENDANTS. | |

**OPINION DENYING PLAINTIFF FRONTIER FARM CREDIT'S
MOTION TO RECONSIDER**

This proceeding is before the Court on a motion by plaintiff Frontier Farm Credit, PCA, to reconsider the opinion signed on September 10, 2006,[1] that granted defendant Ford Motor Credit Company's renewed motion to dismiss the Plaintiff's claim against it ("Dismissal Opinion"). Frontier appears by counsel Richard Petersen-Klein of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, Kansas. Ford Credit appears by counsel Charles R. Hay of Foulston Siefkin LLP of Topeka, Kansas. The Court has reviewed the relevant materials and is now ready to rule.

**DISCUSSION**

Frontier bases its motion on Federal Rule of Civil Procedure 59(e), made applicable here by Bankruptcy Rule 9023, asking the Court to alter or amend its ruling on Ford Credit's motion. The standard for granting a motion to alter or amend is very strict, and typically Rule 59(e) motions are denied.[2] Such motions "cannot be used to relitigate old matters or to raise arguments or present evidence that could have been raised prior to the entry of judgment."[3] As stated by the Tenth Circuit, "[t]he purpose for such a motion is to correct manifest errors of law or to present newly discovered evidence."[4] "New evidence in the context of Rule 59(e) refers to evidence newly discovered after the

---

[1] Entered as Docket No. 123.

[2] 11 Wright, Miller & Kane, *Federal Prac. and Pro.: Civil 2d* § 2810.1 (1995).

[3] *Id*.

[4] *Webber v. Mefford*, 43 F.3d 1340, 1345 (10th Cir. 1994) (quoting *Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1523 (10th Cir. 1992)).

hearing."[5] "In other words, if the evidence could have been introduced earlier, it is not considered newly discovered."[6]

*1. Frontier's Arguments*

As the Court sees it, Frontier argues the Court misinterpreted the law governing its claim to recover over $17,000 the Debtors paid to Ford Credit. Frontier argues that claim is based on "the trust pursuit rule" discussed in *Sprague v. Farm Credit Services*.[7] Although the phrase "trust pursuit rule" was not used in the Dismissal Opinion, the Court agrees the phrase is commonly used to describe claims like the one Frontier is making against Ford Credit. A review of *Sprague* indicates it supports the Court's conclusion that Frontier's amended complaint fails to assert a viable claim against Ford Credit. The *Sprague* court said, "Kansas law permits a third party to keep proceeds paid to it from the unauthorized sale or encumbrance of trust property by the trustee, absent a showing that the third party acted in bad faith, had notice of the trust, or did not give consideration for the payment."[8] While this Court used the Restatement (First) of Restitution's phrase describing a third party who can keep trust property as "a bona fide purchaser,"[9] the Court is convinced the *Sprague* court was describing the same kind of recipient of trust

---

[5]*Property Technologies, Ltd., v. TelNet Corp. (In re Property Technologies, Ltd.)*, 296 B. R. 701, 706 (Bankr. E.D. Va. 2002).

[6]*Id*.

[7]28 Kan. App. 2d 872 (2001).

[8]*Id*. at 876-77.

[9]*See* Dismissal Opinion at 5-9.

3

property.  Frontier's constructive trust claim is based on the alleged fraud of the Debtors, not of Ford Credit, and the Court remains convinced Frontier has not asserted a valid claim to follow the proceeds of such a constructive trust into Ford Credit's hands because Frontier has not alleged Ford Credit acted in bad faith, had notice of the constructive trust, or did not give consideration for the payment the Debtors made to it.

Frontier argues that its allegations indicate Ford Credit did have sufficient notice of the constructive trust for Frontier's interest in property subject to the trust to follow the proceeds into Ford Credit's hands.  It suggests its financing statement, allegedly filed as required by the Uniform Commercial Code, gave all third parties notice of its interest in its collateral.  The Court has been unable to locate any prior reference to the financing statement in Frontier's amended complaint or its responses to Ford Credit's two motions to dismiss.  The copy attached to Frontier's motion indicates the financing statement was on file with the Kansas Secretary of State no later than November 2003, so it could not constitute newly discovered evidence justifying Frontier's motion to reconsider.  The Court could reject Frontier's reliance on the financing statement as coming too late.

The Court would, however, reject the financing statement as possibly having provided the requisite notice to Ford Credit in any event.  Perhaps it would have been sufficient to give notice if Ford Credit had received specific property described in the financing statement or was alerted that it was receiving proceeds of such specific property, but Frontier must rely here on collateral described generically in its financing statement as "All farm products" and as "All proceeds."  As explained in the Dismissal

4

Opinion, Frontier's claim against Ford Credit is this: (1) Frontier loaned money to the Debtors to refinance an existing cattle loan and to buy more cattle; (2) the Debtors fraudulently used some of the money to finance a wheat crop and some to buy a tractor, so a constructive trust should be imposed on the misused money; (3) the constructive trust should attach to the wheat crop and the tractor the Debtors obtained with the misused money; (4) the Debtors later sold the wheat crop and the tractor, and the constructive trust should attach to the proceeds; and (5) the constructive trust should then follow those proceeds into the hands of Ford Credit.[10] A broad, generic collateral description in a financing statement is simply not enough to give a third party notice the debtor is improperly transferring the secured creditor's collateral or its proceeds to the third party, as it must to give notice the proceeds might be subject to a constructive trust in favor of the secured party. Frontier's argument would mean secured creditors whose collateral is misappropriated by their debtors could and would regularly recover the proceeds of the collateral from anyone the debtors might transfer the proceeds to, a result not in accord with this Court's experience.

Frontier suggests the fact the Debtors made the payment to Ford Credit less than 90 days before they filed for bankruptcy gave the requisite notice to Ford Credit. The Court reads *Sprague* to mean the third party must have notice of the trust by the time it receives the proceeds of an unauthorized use of trust assets in order for the beneficiary of

---

[10]Dismissal Opinion at 2-3.

5

Case 06-07005    Doc# 133    Filed 10/23/07    Page 5 of 11

the trust to recover the proceeds from that third party.  The Debtors' post-payment bankruptcy filing came too late to provide the required notice.  Frontier further suggests the fact a bankruptcy trustee can sometimes recover as a preference under § 547 of the Bankruptcy Code a payment a debtor made within 90 days before filing for bankruptcy means the Debtors' bankruptcy filing should satisfy the notice-of-the-trust requirement.  But the recovery of preferences under § 547 is intended (1) to discourage creditors from racing to the courthouse to dismember the debtor during his, her, or its slide into bankruptcy, so the debtor might find a way out of a difficult financial situation without filing for bankruptcy, and (2) to facilitate the prime bankruptcy policy of equality of distribution among the debtor's creditors.[11]  Allowing Frontier to recover money from Ford Credit would not further either of these purposes.

Frontier argues the fact the payment was many times larger than the Debtors' regular monthly payment, apparently coupled with the notice Frontier's financing statement and the Debtors' subsequent bankruptcy filing gave, was sufficient to alert Ford Credit that "something was not right."[12]  The Court cannot agree.  As stated earlier, the bankruptcy filing came too late to give the kind of notice needed to permit Frontier to follow the Debtors' payment into Ford Credit's hands.  The size of the Debtors' payment, even coupled with the generic descriptions of the relevant collateral in Frontier's

---

[11] 5 *Collier on Bankruptcy*, ¶ 547.01 at p. 547-9 (Resnick & Sommer, eds.-in-chief, 15th ed. rev. 2007).

[12] Motion to Reconsider, Docket # 126 at 3.

financing statement, would not have been enough to alert Ford Credit that the Debtors were defrauding Frontier in such a way that a constructive trust could be imposed on the payment they were making to Ford Credit. There is nothing inherently suspicious about a debtor making a larger than normal payment on a debt.

Frontier claims the Debtors' payment to Ford Credit was not "in satisfaction of . . . a pre-existing debt," a phrase used in the Restatement of Restitition,[13] because it did not cover the full debt the Debtors owed Ford Credit. This assertion draws some support from Black's Law Dictionary, which since at least 1933 has defined "satisfaction" to mean giving something to extinguish an obligation or to pay a debt in full.[14] However, the Court believes that attorneys frequently use the word to refer to transfers that pay only part of a debt. In addition, the full context of the phrase in the Restatement of Restitution suggests the authors did not mean for "satisfaction" to exclude partial payment of a debt. The relevant language of the Restatement is: "a transfer of property . . . in satisfaction of or as security for a pre-existing debt or other obligation is a transfer for value."[15] While the word "satisfaction" carries some suggestion that only full payment of a debt qualifies, the phrase "as security for" carries no such connotation.[16] The extent to which a transfer

---

[13] See Restatement (First) of Restitution, § 173(2), p. 696 (1937).

[14] See Black's Law Dictionary 1582 (3d ed. 1933) & version on Westlaw in Oct. 2007 (8th ed. 2004).

[15] Restitution, § 173(2), p. 696.

[16] See Black's Law Dictionary (8th ed. 2004), definitions of "secure," "secured," "secured creditor," "secured loan," and "secured party."

7

as security for a pre-existing debt protects eventual full payment of the debt can be very difficult to determine when the transfer is made and, over time, can change dramatically if the value of the collateral provided fluctuates. Furthermore, the very same property could be transferred either as security for a debt or to pay part of the debt,[17] and the Court sees no reason to treat the first type of transfer as being for value but not the second.

Kansas case law indicates a transfer of money in partial payment of a debt is sufficient to cut off a third party's equitable claim to the money transferred. In *Benjamin v. Welda State Bank*, the Kansas Supreme Court ruled a bank could retain money it had applied to reduce a pre-existing debt owed to it, even though it gave up no security and its debtor had defrauded another to get the draft by which the bank obtained the money.[18] Similarly, in *Tough v. Citizens State Bank*, the same court held a bank was entitled to keep money it received from its debtor without notice of a third party's claim until after the bank had applied it to reduce the amount due on a note.[19] At least a few other courts have similarly denied restitution from a party that received only partial satisfaction of a debt owed to it.[20] A treatise on restitution suggests transfers have properly been treated as discharges for value when they were made in satisfaction or partial satisfaction of, or as

---

[17] For example, certificates of deposit are commonly transferred for either purpose.

[18] 98 Kan. 361, 362-65 (1916).

[19] 89 Kan. 583, 583-89 (1913).

[20] *First State Bank v. Peoples Nat'l Bank*, 459 P.2d 984 (Or. 1969); *Union Central Life Ins. Co. v. Glasscock*, 110 S.W.2d 681 (Ky. 1937).

8

security for, a known claim.[21]  The Court concludes Ford Credit must be treated as having given value for the Debtors' $17,000 payment to it by applying the money to a pre-existing debt, even though the payment left a small balance owing.

In its reply to Ford Credit's response to its motion to reconsider, Frontier for the first time complains that Ford Credit had the burden of proving that it qualified as a bona fide purchaser of the Debtors' payment, citing *Schulein v. Hainer*, an 1892 decision of the Kansas Supreme Court.[22]  Frontier suggests the Dismissal Opinion relieved Ford Credit of that burden.  For a number of reasons, the Court must reject this argument.  First, Frontier has raised it too late.  Second, the Court did not rule that Frontier failed to satisfy its burden of proof, but that it failed meet its burden to plead a valid claim for relief against Ford Credit.  The Kansas Court of Appeals decision in *Sprague* makes clear that Frontier had to allege not only that it could trace property into Ford Credit's hands, but also that Ford Credit either acted in bad faith, had notice of Frontier's constructive trust claim to the proceeds it received, or did not give consideration for the Debtors' payment.[23]  Third, in *Benjamin v. Welda State Bank*, discussed above, the court said *Schulein* involved a claim made by one who was fraudulently induced to transfer ordinary personal property which it was allowed to follow into the hands of a third party who obtained the property

---

[21]George E. Palmer, III *The Law of Restitution*, § 16.6(d) at 501 (1978).

[22]48 Kan. 249 (1892).

[23]28 Kan. App. 2d at 876-77.

without notice of the fraud but in return for only a pre-existing debt.[24] Distinguishing *Schulein*, the *Benjamin* court said a different rule applies when the property transferred is money, or money-substitutes like drafts and checks, in which case giving credit on a pre-existing debt is enough to cut off the defrauded party's equitable claim against the transferred property.[25] In this case, Frontier alleges that Ford Credit was paid with checks. Finally, the Court notes that both commercial law and litigation procedures in Kansas have changed dramatically since 1892,[26] so *Schulein*'s age alone raises questions about its continued validity as authority today on issues in those areas.

Frontier suggests three cases the Court cited are factually distinguishable from this case.[27] But the Court relied on those cases only to establish that Kansas courts have accepted the Restatement (First) of Restitution as persuasive authority,[28] not because they were rulings involving similar facts. That they involved different facts is no reason for the Court to reconsider its decision in this case.

Finally, Frontier argues that if the Court denies the motion to reconsider, it should

---

[24]98 Kan. at 363.

[25]*Id.* at 363-65.

[26]The Uniform Commercial Code took effect in Kansas in 1966, *see* 1965 Kan. Sess. L. ch 564 (eff. Jan. 1, 1966), and Kansas litigation procedure has been modified in most respects (*see* Chapter 60 of the Kansas Statutes Annotated) to follow the Federal Rules of Civil Procedure, which the United States Supreme Court originally adopted in 1937.

[27]*See Excel Corp. v. Jimenez*, 269 Kan. 291, 302-05 (2000); *J.W. Thompson Co. v. Welles Prods. Corp.*, 243 Kan. 503, 512 (1988); *Westamerica Securities, Inc., v. Cornelius*, 214 Kan. 301, 307 (1974).

[28]Dismissal Opinion at 5 & n. 5.

10

allow Frontier to seek an equitable lien on the truck that secures the debt the Debtors owe Ford Credit. A motion to reconsider the dismissal of Ford Credit from this proceeding is not a proper way to seek additional relief against other defendants, and is not a ground for reconsidering the dismissal of Ford Credit from the case.

*2. Ford Credit's Argument*

In its response to Frontier's motion to reconsider, Ford Credit suggests a provision of the Uniform Commercial Code supports the Court's dismissal of Frontier's claim. Having concluded Frontier's arguments do not require any change in its ruling, the Court will not consider the cited UCC provision at this time.

**CONCLUSION**

The Court remains convinced the law it applied in granting Ford Credit's renewed motion to dismiss was correct. Consequently, Frontier's motion to reconsider is hereby denied.

###