**SO ORDERED.**

**SIGNED this 10 day of January, 2008.**



*Dale L. Somers*
Dale L. Somers
UNITED STATES BANKRUPTCY JUDGE

_____

Opinion Designated for Electronic Use, But Not for Print Publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| CHRISTOPHER CHARLES NORRIS, MARY BETH NORRIS, | CASE NO. 05-43551-7 CHAPTER 7 |
| DEBTORS. | |
| FRONTIER FARM CREDIT, PCA, | |
| PLAINTIFF, | |
| v. | ADV. NO. 06-7005 |
| CHRISTOPHER CHARLES NORRIS, MARY BETH NORRIS, CRAIG NORRIS, | |
| DEFENDANTS. | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CRAIG**

**NORRIS'S MOTION TO DISMISS THE CLAIMS ASSERTED AGAINST HIM**

# IN THE PLAINTIFF'S FIRST AMENDED COMPLAINT

This proceeding is before the Court on Defendant Craig Norris's motion to dismiss the claims plaintiff Frontier Farm Credit, PCA, has asserted against him in its first amended complaint. The Defendant appears by counsel Robert S. Tomassi of Wheeler & Mitchelson Chartered of Pittsburg, Kansas. Frontier appears by counsel Richard Petersen-Klein of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, Kansas. The Court has reviewed the relevant pleadings and is now ready to rule.

**FACTS**

Frontier's first amended complaint, supplemented by the Defendant's motion to dismiss, alleges the following relevant facts.

Late in 2003, Debtors Christopher Charles and Mary Beth Norris obtained a $150,000 revolving line of credit from Frontier, indicating the purpose of the line was to refinance an existing cattle loan of $100,000, to use $1,000 to buy "PCA stock," and to buy cattle with the remaining $49,000. The Debtors pledged all their presently-owned and after-acquired cattle to Frontier as security for the line of credit. At some unspecified time, a loan officer at Frontier authorized the Debtors to use some of the line of credit to buy feed for their cattle.

After they filed for bankruptcy, the Debtors testified at the first meeting of their creditors on November 8, 2005, that they had used all the proceeds of the line of credit to buy cattle, had sold all the cattle securing the line, and had used all the cattle sale proceeds to pay Frontier. Frontier alleges the Debtors actually used the proceeds of the

2

line of credit for various other purposes. According to Frontier, some of proceeds were eventually transferred to the Defendant, who is Debtor Chris Norris's son.

One claim Frontier asserts against the Defendant concerns four pieces of equipment: a John Deere tractor, a Great Bend loader, a John Deere bush hog, and a Delta stock trailer. Debtor Chris Norris owned them at the start of 2005, and at that time, thought the tractor was worth $8,000, the loader was worth $4,000, and the bush hog and trailer were worth $1,000 each. In April 2005, the Debtor's attorney arranged for Frontier to release its lien on these four items so the Debtor could sell them to the Defendant for $10,000. The parties agreed to that transaction, and the Defendant paid the $10,000 directly to Frontier in return for the lien release. During a deposition in June 2006, however, the Defendant testified he had bought the tractor alone from the Debtor for $10,000. Relying on that testimony, Frontier alleges the Debtor gave the other three items to the Defendant for no consideration, and induced Frontier to release its lien on them by fraudulently claiming they were part of a sale rather than being transferred as gifts. Frontier claims its lien on the three items should remain enforceable against the Defendant.

Frontier's other claim against the Defendant concerns checks the Defendant received that Frontier alleges were proceeds of its collateral that Debtor Chris Norris sold. As indicated earlier, all the Debtors' cattle were pledged to secure their line of credit with Frontier. Frontier contends that in March 2004, Debtor Chris Norris sold 198 head of cattle through a livestock market, and had the market issue a $25,000 check to the

3

Defendant from the proceeds of the sale. A few days later, Frontier adds, the Debtor transferred another $5,600 from the sale proceeds by giving the Defendant a check drawn on the account of an entity the Debtor and his wife owned. According to Frontier, the Defendant deposited the checks and paid $30,547.36 of the proceeds on a debt he owed to his bank. Frontier further alleges that in August 2004, the Debtor sold another 25 head of cattle through the livestock market, and had the market issue a $15,187.54 check to the Defendant from the proceeds of that sale. When the Defendant deposited this check, Frontier says, $14,500.01 was applied to a debt he owed his bank. Based on these assertions, Frontier alleges the Defendant's bank possesses $45,047.37 and the Defendant $740.17 from the proceeds of Frontier's collateral, and asks the Court to impose constructive trusts on those proceeds.

Although the Debtors made various draws against their line of credit with Frontier during 2004, they also made several substantial payments on the debt during that year. According to Frontier's amended complaint, these included $100,000 in March from the sale of the 198 head of cattle, $40,723.60 in December from the sale of 45 head of cattle, $26,356.56 in October from a sale of corn, and $35,000 in July that was paid by a company the Debtors owned (the source of this money was not otherwise specified).

In May 2005, Frontier "called" the Debtors' line of credit and sued them in state court for the balance owed on it. In September 2005, the state court entered a judgment for Frontier for a little over $40,000. Frontier alleges it retained its security interest in the Debtors' farm assets under the judgment.

4

The Defendant now asks the Court to dismiss both the claims Frontier has asserted against him in its amended complaint. In his attack on the first claim, he argues correspondence between Frontier and the Debtor's attorney establishes that the Defendant's $10,000 payment was to buy all four pieces of equipment. In his attack on the second claim, he argues that the claim is barred by the statute of limitations and that the Court's ruling that Frontier failed to plead facts sufficient to assert a fraud claim against the Defendant's bank means Frontier's allegations are also insufficient to assert a fraud claim against him.

**DISCUSSION**

*1. Standards for motions to dismiss.*

Federal Rule of Civil Procedure 12 provides that defenses are generally to be asserted in a responsive pleading but that certain defenses may be made by motion, including the defense of "failure to state a claim upon which relief can be granted."[1] Until recently, federal courts considering motions to dismiss under Rule 12(b)(6) have frequently tried to apply a standard drawn from the following statement the Supreme Court made in 1957 in *Conley v. Gibson*:

> In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

---

[1] Fed. R. Civil P. 12(b)(6). Fed. R. Bankr. P. 7012(b) makes Civil Rule 12(b) apply in adversary proceedings.

claim which would entitle him to relief.[2]

In May 2007, however, in *Bell Atlantic Corporation v. Twombly*,[3] the Supreme Court indicated many courts had been misunderstanding the *Conley* opinion. In the quoted sentence, the Court explained, *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."[4] Instead, the Court described the standard that must be met in pleading a claim for relief this way:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley*[,] 355 U.S. [at] 47 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid*.; [additional citation omitted], a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, [citation omitted]. Factual allegations must be enough to raise a right to relief above the speculative level, [citation and footnote omitted], on the assumption that all the allegations in the complaint are true (even if doubtful in fact), [citations omitted].[5]

So this Court must evaluate the Defendant's motion to dismiss and Frontier's amended complaint with this standard in mind.

*2. Frontier's claim to reinstate its lien.*

The Court must deny the Defendant's motion to dismiss Frontier's claim to

---

[2]355 U.S. 41, 45-46 (1957). *See, e.g., Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir. 2006).

[3]___ U.S. ___, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

[4]127 S.Ct. at 1969.

[5]127 S.Ct. at 1964-65. Fed. R. Bankr. P. 7008(a) makes Civil Rule 8 apply in adversary proceedings.

6

reinstate its lien on the loader, the bush hog, and the trailer.  The materials the Defendant submitted to support his motion to dismiss do indicate Frontier agreed to release its lien on those items, as well as a tractor, in return for the Defendant's $10,000.  Frontier's claim is that the Debtor misrepresented the transaction as a sale of all four items to the Defendant, when, in reality, he sold the tractor alone for $10,000 and gave the loader, the bush hog, and the trailer to the Defendant for free.  If accepted by the factfinder as the truth, such circumstances could justify reinstating Frontier's lien on those three items and allowing the lien to be enforced against them (assuming the Defendant has them).

*3. Frontier's claim for a constructive trust on money the Debtor gave the Defendant.*

    *a. Statute of limitations.*

The Defendant first attacks Frontier's claim for a constructive trust on money the Debtor gave him based on the Kansas statute of limitations for conversion claims, K.S.A. 60-513(a)(2).  Frontier responds that its claim is based on fraud, not conversion.  As relevant here, K.S.A. 60-513 provides:

> (a) The following actions shall be brought within two years:
>    . . . .
>    (2)  An action for taking, detaining or injuring personal property, including actions for the specific recovery thereof.
>    (3)  An action for relief on the ground of fraud, but the cause of action shall not be deemed to have accrued until the fraud is discovered.
>    . . . .
> (b) [With an exception for claims concerning professional health care services], the causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitations shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to

7

the cause of action.

Under this provision, where the evidence is disputed about when substantial injury first occurred or when the injury became reasonably ascertainable, that dispute must be resolved by the trier of fact,[6] not by a court deciding a motion to dismiss.

The Defendant contends the fact the transfers Frontier is attacking all occurred during 2004, while Frontier did not sue him until February 2007, more than two years later, means Frontier's claims against him are barred by the statute of limitations. But the allegations in Frontier's complaint do not suggest, much less concede, that Frontier knew about the transfers when they occurred, nor do they establish a time when Frontier learned the transfers had been made or when it realized the transfers had injured its interests. Even if Frontier's claims must be interpreted to be conversion claims covered by subsection (a)(2) of the statute so the fraud discovery rule in (a)(3) does not apply, subsection (b) prevented the statute from starting to run until the transfers first caused substantial injury to Frontier or until the fact of injury became reasonably ascertainable to Frontier.

The allegation that the Debtors testified in November 2005 that they had not violated their obligations to Frontier on the line of credit is sufficient, by itself, to raise a fact question about the time when the Debtor's allegedly wrongful transfers to the Defendant and the injury they allegedly caused became reasonably ascertainable to

---

[6]*Great Plains Christian Radio, Inc., v. Central Tower, Inc.*, 399 F.Supp.2d 1185, 1198 (D.Kan. 2005).

8

Frontier. In addition, the allegations that the Debtor made substantial payments to Frontier during 2004 suggest the possibility that even if Frontier knew the Debtor was selling its collateral, it had no reason to suspect the Debtor was misusing some of the proceeds. The materials before the Court fall far short of establishing that the injury was already necessarily reasonably ascertainable before the Debtors' November 2005 testimony, so the Defendant's motion to dismiss Frontier's claims against him based on the two-year statute of limitations must be denied. Perhaps the evidence at trial would establish that the transfers caused substantial injury that was reasonably ascertainable to Frontier more than two years before Frontier sued the Defendant in this proceeding, but the allegations of Frontier's amended complaint do not.

      *b. Sufficiency of fraud allegations.*

The Defendant also suggests that Frontier has not pleaded fraud with the specificity required by the rules of procedure, and that the Court already ruled as much in dismissing Frontier's claims against the Defendant's bank, the First National Bank of Girard. The Court would not characterize its ruling quite that way. Frontier alleges the Debtor defrauded it by selling its collateral and using the proceeds for purposes other than paying his debt to Frontier. The sufficiency of the allegations of the Debtor's fraud was not involved in the dismissal of the claims against the bank. Instead, the Court ruled that Frontier had failed to allege facts necessary to justify imposing a constructive trust on money in the bank's hands that was proceeds of the Debtor's alleged fraud.

Under Kansas law, a plaintiff cannot assert a valid claim to recover from a third

9

party simply by claiming someone defrauded the plaintiff and paid the proceeds of the fraud to the third party. Instead, as indicated in Sprague v. Farm Credit Services, 28 Kan. App. 2d 872 (2001). the plaintiff must also allege the third party recipient acted in bad faith, had notice of the plaintiff's trust interest in the original property involved, or did not give consideration for the payment. In its amended complaint, Frontier alleged only that the Debtor defrauded it and gave the Defendant checks that constituted proceeds of his fraud, $740.17 of which the Defendant still possessed.

Frontier's allegations against the First National Bank said the bank received the money as payments on debts the Defendant owed it. Frontier's allegations about the Defendant identify three occasions when the Debtor transferred checks to the Defendant that allegedly constituted proceeds of Frontier's collateral,[7] but do not explain why the Debtor gave the checks to the Defendant. Since the Defendant is the Debtor's son, the allegations suggest the possibility the checks were gifts the Debtor gave him, but do not explicitly assert this to be the case. This comes closer to stating a claim for relief than Frontier's claims against the First National Bank did.

Applying the pleading standard set out in *Bell Atlantic v. Twombly*, however, the Court concludes Frontier's allegations are not sufficient to state a claim for relief against the Defendant to impose a constructive trust on the $740.17. Nothing in the complaint suggests the Defendant acted in bad faith in receiving that money or had notice of

---

[7]*See* ¶¶ 95, 97, 99, and 107-09 of amended complaint.

Frontier's trust interest in the money. As indicated, the fact the Defendant is the Debtor's son suggests the possibility the Defendant gave no consideration for the money, but the complaint simply does not go so far as to allege that to be true, and therefore fails to give the Defendant fair notice of what the claim is and the grounds on which it rests, as the Supreme Court has ruled is required. Therefore, the Defendant's motion to dismiss this portion of Frontier's claims against him must be granted.

**CONCLUSION**

For these reasons, the Court concludes the Defendant's motion to dismiss Frontier's claims against him must be granted in part and denied in part. The claim seeking to have Frontier's lien on the three pieces of equipment reinstated and enforced sufficiently states a claim for relief, but the claim seeking to have a constructive trust imposed on money the Defendant received from the Debtor does not, so it is hereby dismissed.

Frontier has filed a motion to amend its complaint again to modify, among other things, its allegations against the Defendant. The Defendant opposes the motion. The Court will consider that motion in a separate opinion.

# # #

11

Case 06-07005   Doc# 162   Filed 01/10/08   Page 11 of 11